UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

M.P.B. (XXX-XX-4054)                    CIVIL ACTION NO. 15-cv-2479

VERSUS                                  JUDGE HICKS

CAROLYN W. COLVIN                       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Plaintiff was born in 1953 and has a 10th-grade education. She contends that she became disabled in 2000 based primarily on the affects of fibromyalgia and back pain. An ALJ conducted a hearing and held that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform the full range of light work, which allowed her to perform the demands of certain jobs identified by a vocational expert ("VE"). That decision was eventually appealed to this court, and it was reversed and remanded on the grounds that the ALJ did not give sufficient reasons to discount the opinions of treating physician Dr. Leigh Dillard. M.P.B. v. Astrue, 12-cv-0088; Tr. 587-599.

On remand, the Appeals Council referred the case to an ALJ for further proceedings consistent with the order of the court. Tr. 602. ALJ Kelley Day held a new hearing and found that Plaintiff was not disabled because she could perform the demands of a purchasing agent, one of her former jobs. Tr. 606-13. The Appeals Council found that the decision still

did not adequately address certain issues, including an evaluation of the treating source opinions of Dr. Dillard.  The case was remanded for yet another hearing.  Tr. 621-23.

ALJ Day conducted another hearing and issued the decision that is now before the court.  She addressed Dr. Dillard's opinion in considerable detail and again found that Plaintiff was not disabled because she could perform her past relevant work as a purchasing agent. Tr. 457-68.  That became the Commissioner's final decision, and Plaintiff filed this appeal.

**Issues on Appeal; Standard of Review**

Plaintiff raises two arguments on appeal: (1) The ALJ did not properly weigh the opinion evidence from Dr. Dillard and (2) The ALJ did not properly evaluate Plaintiff's credibility.

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Medical Evidence**

Plaintiff went to see neurosurgeon Marco Ramos in January 2002.  He diagnosed her with cervical radiculopathy, secondary to spondylosis, and herniated nucleus pulposus.  Dr. Ramos performed surgery that included a diskectomy, fusions, and installation of plates and screws.  Within weeks, Plaintiff reported that her severe pain and discomfort before the surgery had "subsided to a significant degree" and her symptoms continued to improve.  By April 2002, three months after the surgery, she experienced some pain in the midline of the neck, but it was of brief duration and of a tolerable degree that subsided spontaneously.  An examination was "essentially unremarkable" other than some limitation to range of motion in the cervical spine.

By the end of May 2002, Plaintiff reported that her neck had "been doing much better," but she had mid-thoracic pain in the spine.  Plaintiff fell down a few stairs later in the year, and she reported in December 2002 that she felt a "pop" in her neck during the fall and had been having intense neck pain.  Examination showed some limitation to the range of motion of the cervical spine, and Dr. Ramos discussed the possibility of removing the hardware that had been installed.  The removal surgery was performed later in December 2002.  The last record from Dr. Ramos is dated January 28, 2003.  Plaintiff stated during that visit that her neck condition had "improved significantly" since her last visit, and the only discomfort she experienced was some difficulty swallowing (which was improving).  Ramos' examination of the cervical spine and upper extremities was "essentially unremarkable."  Tr. 198-215.

The ALJ found that Plaintiff was disabled between January 2000 and June 2, 2003 (a few months after her final visit to Dr. Ramos), but her condition improved after that date so that she was no longer disabled.  Plaintiff's insured status ended on December 31, 2005.  The ALJ and Plaintiff's counsel agreed at the beginning of the most recent hearing that the relevant period is from when Plaintiff turned 50 in December 2003 (her amended alleged onset date) and December 2005 (when her insured status expired).  Tr. 521-25.  Accordingly, it is her condition between December 2003 and December 2005 that is at issue here.  Later deterioration of her health is not relevant to this application.

Medical records from Dr. Dillard show that in 2002 Plaintiff had, relevant to the claims here, tenderness mainly in the lower thoracic area down to the hips.  She was taking Vioxx (for arthritis), Lortab, Lipitor, and Tylenol.  Tr. 297.  Plaintiff stated in May 2002 that she had stopped taking Vioxx since her last visit, and she could tell a great difference.  She complained of back pain, but her lumbar spine films were "absolutely normal."  Tr. 296.  Plaintiff saw Dr. Dillard in June 2003, after her neck surgery and removal of the hardware, and complained that she had mid-thoracic back pain and was tired of hurting.  Plaintiff grimaced in pain anywhere she was touched over the thoracic area from the spine to the shoulder blade.  Dr. Dillard wrote that the findings were more consistent with fibromyalgia than anything else.  Dr. Dillard prescribed medication on a trial basis for fibromyalgia.  He noted that Plaintiff was also seeing Dr. Pressley for osteoarthritis.  Tr. 293.

Dr. Dillard wrote in April 2004 that he had been refilling pain medications for Plaintiff but had not seen her in six months, so he ordered that she come in before any further

refills were granted.  He noted that Plaintiff's fibromyalgia was worse, and she was under stress with her husband receiving chemotherapy for cancer.  Her medications were adjusted. Tr. 292.  By June 2004, Plaintiff was reported as doing "well for the past month," and she had a much improved demeanor and mood.  Tr. 291.  Dr. Dillard refilled prescriptions for Lortab and Robaxin in May 2005 to treat fibromyalgia.  Tr. 290.

Plaintiff's last visit during her insured status was December 22, 2005.  She complained of a variety of issues such as cough, sweats, and sore throat.  There was no complaint of neck or back pain, but the visit was obviously geared toward treating cold type symptoms.  Tr. 288.  Records show that Plaintiff continued to see Dr. Dillard through 2007, often for issues related to high blood pressure.  He continued to fill her prescriptions for Lortab and Elavil, and Lyrica was also prescribed to treat fibromyalgia.  Tr. 276-87.

Dr. Dillard wrote a short letter in January 2010 that Plaintiff "is unable to perform or seek gainful employment due to chronic medical problems that require multiple medications, and manifest as constant pain."  Dr. Dillard added that the condition had existed since April 2002, and the diagnoses were fibromyalgia, osteoarthritis, and post-cervical diskectomy pain syndrome.  Tr. 341.

A few months later, in May 2010, Dr. Dillard completed an eight-page Multiple Impairment Questionnaire that included 29 questions, some of which were multi-parted, about Plaintiff's abilities to engage in work-related activities.  Dr. Dillard wrote that he had first treated Plaintiff in 2002 and saw her approximately every six months.  The diagnoses was the same as listed in the letter, plus COPD, leukemia (apparently in remission and not

at issue here), sleep apnea, and hyperlipodemia (high cholesterol).  He estimated Plaintiff's pain level to be in the moderate to moderately severe range, with her fatigue at the low end of the moderate level.  He estimated that Plaintiff could, in a normal workday, sit for six hours and stand/walk for two hours (which is consistent with light work).  He estimated Plaintiff's abilities to lift and carry weights that are consistent with light work.

Dr. Dillard also found, however, that Plaintiff had additional limitations that are inconsistent with the ability to perform the full range of light work.  For example, he found a moderately limited ability to grasp, turn, or twist objects, as well as to use the arms for reaching.  He opined that when Plaintiff is sitting, she will be required to get up and move around on an hourly basis, and do so for 15 to 30 minutes before sitting again.  Dr. Dillard also found Plaintiff had a low capability to tolerate work stress, would need to take unscheduled breaks to rest one or two times each day, and would be absent from work as a result of her impairments about two to three times a month.  Finally, Dr. Dillard stated that Plaintiff could not engage in any pushing, pulling, kneeling, bending, or stooping.  Tr. 394-401.

**Plaintiff's Testimony**

As noted above, the ALJ and counsel for Plaintiff clarified at the beginning of the hearing that the relevant period was from when Plaintiff turned 50 in December 2003 and December 2005.  Tr. 521-25.  Plaintiff testified that she quit her job as purchasing agent at Willis-Knighton Hospital in 2000 because she was having a lot of pain in her back,

shoulders, and neck.  The job was requiring her to "pick up a lot of heavy stuff," and she could not do it anymore.  Tr. 525.

Plaintiff testified that Dr. Dillard, a family practitioner, was her main physician during that time.  She would go to see him every three to six months, depending on whether she was having problems with her back.  She also described how Dr. Dillard treated her for his diagnosis of fibromyalgia.  Tr. 525-26.  Plaintiff said she had pain all up and down her spine, from her neck to her tailbone, and she also had muscle pain.  Tr. 527.  Plaintiff was able to drive at that time, if she had to, and she did the grocery shopping for her and her disabled husband.  Tr. 527-28.  Plaintiff described problems breathing (she quit smoking several times), COPD, and leukemia, but those were conditions that began to manifest themselves primarily after 2005.  Tr. 529-31.

Plaintiff testified that she originally did some light housework, but she required help from her adult daughters and other family members, especially for anything that required bending or stooping (because her knees would not work).  Plaintiff said she also saw Dr. Pressley, a rheumatologist, at the same time she was seeing Dr. Dillard.  She saw Dr. Pressley only briefly, in an effort to find relief from her pain.  He treated her with injections in the hips in 2002.  Tr. 532-33.

Plaintiff recounted her two surgeries by Dr. Ramos, and the fall that aggravated her pain.  She could not remember that Dr. Ramos placed any specific limitations on her activities after the surgery.  Tr. 534-36.  Plaintiff stated that her fibromyalgia pain was always present, but varied in intensity.  She said that, during the relevant time period, any

type of strain or stress would increase the pain. The majority of lifting, bending, stooping, or twisting type activities would hurt. Tr. 537-39. Plaintiff said that the condition caused pain in her hands, and she frequently dropped things because of it, and she could not open jars. Tr. 540.

**Treating Physician's Opinion**

The ALJ analyzed Plaintiff's claim under the familiar five-step sequential analysis. Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007). Part of that analysis includes an assessment of the claimant's residual functional capacity ("RFC"). The RFC is the most the claimant can still do despite her limitations. The RFC is then used at step four to determine if the claimant can perform her past relevant work, and at step five to determine whether the claimant can perform any other work. Perez v. Barnhart, 415 F.3d 457, 461-62 (5th Cir. 2005).

The ALJ found that, beginning June 3, 2003, through the date last insured, Plaintiff had the RFC to perform light work, subject to the limitations that she can only occasionally (very little up to one-third of the time) reach and handle, only occasionally rotate her neck to the left, and can no more than frequently (up to two-thirds of the day) flex and extend her neck. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

Plaintiff argues that the ALJ's RFC is inconsistent with the limitations suggested by Dr. Dillard and that the ALJ was wrong to discount his opinions. The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. The treating physician's opinion on the nature and severity of a patient's impairment will be given "controlling weight" if it is well supported by medical evidence and not inconsistent with other substantial evidence. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

The ALJ may, however, discount the weight of a treating physician's opinion when good cause is shown. Good cause exists when a treating physician's opinion is conclusory, unsupported by medically acceptable techniques or is otherwise unsupported by the evidence. Newton, 209 F.3d at 455-56. The regulations provide that if the Commissioner does not give a treating source's opinion controlling weight, certain factors will be considered in deciding the weight that is given to the opinion. 20 C.F.R. § 404.1527(c). The regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

Even if the treating source's opinion is not well supported by medically acceptable evidence or is inconsistent with other substantial evidence in the record, that means only that the opinion is not entitled to controlling weight.  It is still entitled to some deference and must be weighed using all of the factors in the above list.  <u>Newton</u>, 209 F.3d at 456.

The ALJ thoroughly reviewed the available medical evidence and listed each of the Section 1527 factors.  She noted that Plaintiff had been treated by Dr. Dillard since approximately April 2002, and with sufficient frequency to inform Dr. Dillard on the claimant's impairments, but there was contradictory information that undermined his opinion. The ALJ compared the findings of Dr. Dillard (a general care practitioner) regarding limitations to treatment notes from Dr. Ramos (a neurosurgeon) and noted that Ramos is a specialist.  The Ramos records included persuasive evidence of improvement in the spine symptoms after surgery.  And Dr. Dillard's own records show that Plaintiff's fibromyalgia pain improved with prescribed medications.  Other impairments, such as leukemia and lumbar spine degenerative disk disease, were not diagnosed until years after the date last insured.  Dr. Dillard's opinion considered the leukemia.  For these reasons, the ALJ afforded "little weight" to Dr. Dillard's medical opinions.

On the other hand, the ALJ also discounted the finding of a state agency medical consultant who found that Plaintiff could perform the full range of light work.  The RFC assessed by the ALJ was somewhere in the middle, with a basic finding for light work, but subject to additional limitations that reflected most of the findings of Dr. Dillard regarding Plaintiff's problems with her hands and neck.

Determining a claimant's RFC is the ALJ's responsibility.  <u>Ripley v. Chater</u>, 67 F.3d 552, 557 (5th Cir.1995).  "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence."  <u>Gonzales v. Astrue</u>, 231 Fed. Appx. 322, 324 (5th Cir. 2007).  This includes the authority "to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir.1990), quoting <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir.1985).

This court previously remanded for lack of a proper <u>Newton</u> analysis but noted, "The same result may be reached even after the six-factor analysis is properly conducted."  The ALJ, in the decision now under review, followed the <u>Newton</u> requirements for assessing the credibility and weight of the medical evidence in this record. She discussed the regulatory factors and how they affected the weight she afforded Dr. Dillard's opinion. Reasonable persons could disagree about the extent to which the ALJ credited Dr. Dillard's findings regarding the extent of Plaintiff's limitations, but the ALJ explained her reasoning adequately in her written decision, and her ultimate conclusion is supported by substantial evidence. That is sufficient to withstand the limited judicial review available under the deferential standard of 42 U.S.C. § 405(g). The ALJ also stated that any conclusory statements by Dr. Dillard that Plaintiff "is disabled" or unable to work were legal conclusions that could be disregarded by the Commissioner, and that is correct.  <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003).

**Credibility Assessment**

Plaintiff argues that the ALJ failed to properly evaluate her credibility because the ALJ used only boilerplate findings.  The regulations require the ALJ to make a finding about the credibility of the claimant's statements about her symptoms and their functional effects. It is not sufficient for the adjudicator to make a single, conclusory statement that allegations or testimony are not credible; the decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to allow reviewers to assess the weight the ALJ gave to the claimant's statements.  Social Security Ruling 96-7p (Superseded by SSR 16-3p effective March 28, 2016).

But an ALJ need not specifically discuss every factor set forth in the regulations to withstand judicial review of a credibility assessment regarding a symptom.  Hillman v. Barnhart, 2006 WL 690879 (5th Cir. 2006).  And if an ALJ has substantially complied with the regulations in the assessment of the claimant's credibility, that decision is entitled to judicial deference.  Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994); Clary v. Barnhart, 214 Fed. Appx. 479, 482 (5th Cir. 2007) ("The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility") ; and Undheim v. Barnhart, 214 Fed. Appx. 448, 451 (5th Cir. 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination").

The ALJ's decision noted Plaintiff's testimony that her neck pain did not improve after the surgeries, but the ALJ countered with citation to medical records in which it was

reported that Plaintiff said her neck condition had improved significantly.  The ALJ also pointed to other medical records that she perceived to be inconsistent with the extent of limitation claimed by Plaintiff.  She also noted, during the discussion of the medical records, Plaintiff's descriptions of her conditions to her physicians.  The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible for the reasons explained in this decision."  Tr. 465. The ALJ also noted a lack of objective evidence that, prior to the date last insured, Plaintiff would miss work multiple times per month, as suggested by Dr. Dillard and as claimed by Plaintiff at the hearing.  Tr. 466-67.

The ALJ's opinion, as a whole, gives sufficient reasons and documentation for her rejection of the degree of limitation claimed by Plaintiff in her testimony.  Plaintiff's description of her conditions at the hearing was fairly general, and she has not pointed to any particular limitation she testified about that was wrongfully rejected by the ALJ.  Plaintiff spoke of her condition in general terms, and the ALJ discounted the weight of her testimony in the same manner.  The only specific evidence about the degree of limitations was in the medical records, and the ALJ gave sound reasons for her assessment of the weight of that evidence.  Under these circumstances, the undersigned finds that the ALJ adequately assessed the credibility of Plaintiff's subjective complaints, and the ultimate decision is supported by substantial evidence.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed and that Plaintiff's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of February, 2017.

Mark L. Hornsby
U.S. Magistrate Judge